ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 23 2013

at ____ o'clock and ____ min ____ M.
SUE BEITIA, CLERK

BRIAN EVANS

GENERAL DELIVERY

KEAAU, HAWAII 96749

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRIAN EVANS, Plaintiff, Pro Se

v.

(All Defendants)

**THE BOSTON RED SOX**

4 Yawkey Way

Boston, MA 02215,

**FENWAY SPORTS MANAGEMENT**           CIVIL COMPLAINT NO. CV13 00262 SOM BMK

82 Brookline Street,

Boston, MA 02215,                                         COMPLAINT; EXHIBITS

**LARRY LUCCHINO,** Individually and o/b/o The Boston Red Sox and Fenway Sports Management,

**DAVID FRIEDMAN,** Individually and o/b/o The Boston Red Sox and Fenway Sports Management,

**DR. CHARLES STEINBERG,** Individually and o/b/o The Boston Red Sox and Fenway Sports Management,

**TOM WERNER,** Individually and o/b/o The Boston Red Sox and Fenway Sports Management,

**JOHN HENRY,** Individually and o/b/o The Boston Red Sox and Fenway Sports Management,

**SAM KENNEDY,** Individually and o/b/o The Boston Red Sox and Fenway Sports Management,

**RASKY BAERLEIN STRATEGIC COMMUNICATIONS, INC.**

70 Franklin Street

3rd floor

Boston, MA 02110

DOES 1-10

## **COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, FRAUD, INTERFERENCE WITH CONTRACT**

### **JURY TRIAL DEMANDED RESPECTFULLY**

Plaintiff BRIAN EVANS comes forth to this court to allege Breach of Contract, Intentional Infliction of Emotional Distress, Fraud, and Interference with Contract (also known as Interference with Economic Advantage).

In May, 2011, The Boston Red Sox and other named Defendants, in writing, approached and provided permission to Plaintiff to create and then film a music video for Fenway Park and The Boston Red Sox.

After co-owner Larry Lucchino of The Boston Red Sox called the song "Awefully good," **(Exhibit A)** in a communication to Plaintiff, who was at all times a resident of Hawaii, Plaintiff then set out to accomplish what he was asked to do in a letter and various telephone conversations thereafter, on the letterhead **(Exhibit B)** of The Boston Red Sox and signed by Sr. Vice-President of The Boston Red Sox, David Friedman, and via numerous phone calls and in-person meetings with Plaintiff Brian Evans and his associate, Mark A. Biltz.

At the request of the Defendants via numerous telephone calls, Evans temporarily went to Massachusetts for the purposes of this project, to shoot a music video for The Boston Red Sox (maintaining his Hawaii identification, mailing address, and contacts in Hawaii as well as his Hawaii corporation).

Upon arrival in Boston, Plaintiff was advised that Nick Roper, the secondary signature on the letter by The Boston Red Sox, no longer worked for The Boston Red Sox. Co-Defendant David Friedman, however, did.

Approximately one week prior to the filming of the music video, after enormous exposure led to the song becoming #3 on Amazon.com's best seller list, Plaintiff was puzzled by a request that he pay a $40,000 "fee" to film the video at the park, a video The Boston Red Sox, as obviously by their original letter of May, 2011, was engaging Evans to begin creating. Under duress and in an attempt to avoid embarrassment where the highly publicized video would not be filmed, Plaintiff had no choice but to pay the fee, despite being told previously that there would be no such fee by co-defendant Friedman.

On September 25th, 2012, with full authority by Major League Baseball and The Boston Red Sox, the music video, "At Fenway," was filmed at Fenway Park. Actor William Shatner portrayed the home plate umpire in the music video, and prior to filming, during a game, both Evans and Shatner were shown on the Fenway Park jumbotron to announce their appearance at the field. Evans sang the National Anthem at that very game.

Then, on October 5th, 2012, the unthinkable happened. Plaintiff's mother died following what was supposed to be a routine knee surgery after being left in an unmonitored recovery room, despite the hospital knowing she had a condition known as Sleep Apnea. Dosed out on morphine following the surgery, she went into cardiac arrest.

Plaintiff then created a website for his mother as he sought to seek justice for his mother against the hospital, The Holy Family Hospital in Methuen, Massachusetts. The hospital is owned by Steward Health Care System.

## INTERFERENCE WITH ECONOMIC ADVANTAGE/INTERFERENCE WITH CONTRACT/FRAUD/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Both the Boston Red Sox and Steward Health Care System, who owns the hospital Plaintiff publicly brought to light, are both represented by the same public relations firm in Boston, Rasky Baerlein. Co-defendant Larry Lucchino is often at events with Steward Health Care System's CEO, Ralph De La Torre

(One need only "Google" both of their names together to verify this), <u>and through the "management section" of the website of Plaintiff's mother (helenbousquet.com), Plaintiff was able to track the visiting IP addresses, on the day the music video was being released, to Steward Health Care System, The Boston Red Sox, and Rasky Baerlein, all within one hour of the video's online release combined that day, and daily thereafter</u>. Just one hour after the music video debuted on "The Today Show," to glowing reviews, various media in Boston all began to "trash" the video. Steward Health Care System, as well as The Boston Red Sox, routinely run advertising on the very media outlets that began to suppress or avoid the music video.

Plaintiff was then denied the opportunity to appear on *any* TV or radio shows in Boston to promote the music video. Plaintiff had appeared on all of the shows prior to being outspoken over what happened to his mother, but was banned thereafter. Steward Health Care System and The Boston Red Sox, along with Rasky Baerlein, all have relationships with these networks.

Defendants then began a crusade to interfere in potential sponsorships Plaintiff was negotiating with Bank of America, Anheuser Busch worth $5 million, Jerry Remy's, and other companies who were in discussions with Evans to place a "30 second commercial" prior to the YouTube upload of the music video. Despite Defendants best efforts to suppress the video, interfere with Plaintiff's business dealings, and to cause Plaintiff to "get out of Boston," a state where the Plaintiff was born, the video has received more than 3.7 million views on YouTube in just the first six weeks. This was nationally, as Boston media had all but banished Plaintiff due to the favoritism of The Boston Red Sox, Steward Health Care System, and it's mutual relationship with the biggest PR firm in Boston, whom they are both clients of, Rasky Baerlein, not to mention advertising dollars generated by radio and TV in Boston by all three.

In short, despite having appeared on every TV channel in Boston in the past to promote things as small as a performance in a city on its outskirts, not one single TV show would have Plaintiff on to promote

"At Fenway," the first music video ever to be filmed by a solo artist in the history of Fenway Park, which just weeks ago was added to the Library of The National Baseball Hall of Fame, for which Plaintiff received in writing confirmation thereafter. Not one radio or TV interview for a music video that achieved that historic recorded music video, featuring iconic film and TV star William Shatner as its umpire in full Major League Baseball gear, for a performer who has previously appeared on all of them to promote a small show in an outskirt city, would allow Plaintiff on to promote the video. All of these shows run advertising for Steward Health Care System, and have relationships with The Boston Red Sox, the named and un-named co-defendants, and Rasky Baerlein. Even The Boston Globe, who ran a glowing review of the song in the story with the headline "At Fenway has Evans sliding triumphantly into home," was replaced with the headline "Insulting your intelligence, one song at a time," following Evans public display against Steward Health Care, who runs display advertising in The Boston Globe, a newspaper the Red Sox once owned and maintains numerous contacts. The only media not to play a part in this has been The Boston Herald.

Defendants also conspired to "torpedo" or "destroy" business relationships that would have resulted in merchandising, including a musical gift card that co-defendant Friedman himself emailed Plaintiff about.

Despite the full support of fans of the Boston Red Sox, who have all supported Evans efforts to seek justice for his mother (efforts that now has state senators in the midst of creating new proposals to legislation so that what happens to Plaintiff's mother does not happen to another, not to mention three Governor Proclamations to bring attention to the condition known as Sleep Apnea), The Boston Red Sox, Steward Health Care System, Rasky Baerlein, and the named and still-un-named Defendants conspired to torpedo a music video they had themselves allowed to be filmed on hallowed ground, Fenway Park, home to the Boston Red Sox. Brian Evans is the first solo artist in history to film such a music video entirely at Fenway Park. Plaintiff chose to defend his mother rather than to appease the ego of Red Sox Management and its friends and associates, which fans of the Red Sox have entirely supported, while

management (as even reported by local Boston writer Dan Shaughnessy reported in his column) have distanced themselves from the video they initiated and profited from. Unfortunately, Red Sox management and Steward Health Care System executives are friends who share the same PR firm, combing the website of Plaintiff's mother the day the video was released as is confirmable through the IP addresses that have been tracked back to them and will be, at some point, introduced as evidence in this case. Plaintiff also had personal, one-on-one conversations, with John Henry (on numerous occasions) and Dr. Charles Steinberg, about the song and music video, which further cement Plaintiff's expectations and beliefs.

After Defendants caused Plaintiff to put together the first music video ever to be filmed at Fenway Park entirely by a solo artist, and after allowing Plaintiff to film that music video, Defendants have done all they can to see to it that a music video, which would be obviously most popular in a state where all of Steward Health Care System's hospital are, never saw the light of day locally. To this day, Defendants have never even aired the video in the park (despite having played the audio recording of the song prior to Plaintiff's mother's death, at the park during live games). While Defendants have made numerous statements regarding the Plaintiff now, they certainly were not issues prior to or on the day of filming, despite their full knowledge of artist and artist's prior work and life of past.

The Plaintiff prays this Honorable Court will permit him the latitude of a Pro Se litigant until such time as an attorney enters this case. Plaintiff realizes and will obey the rules of this court and civil procedure until such time as that occurs.

It should also be noted that despite the fact that Plaintiff's outcry over what happened to his mother has resulted in the systematic deployment of negativity surrounding the music video in Defendants efforts to suppress it, that the outcry has resulted in numerous meetings with Massachusetts State Senator Bruce Tarr, who as a result of the case involving Plaintiff's mother, is in the midst of creating proposals

to new legislation so that what happened to Plaintiff's mother does not happen to another. Plaintiff would not simply "shut up" over what happened to his mother over a music video, but Defendants were obligated to fulfill their numerous promises made in multiple physical meetings at Fenway Park. Taking advantage of Plaintiff's emotional state following his mother's passing, The Boston Red Sox have attempted to reference emails written following his mother's passing that have transpired between the two against him. Plaintiff's therapist will confirm that any emails sent by Plaintiff to Defendants were written under extreme emotional distress and disturbance as The Boston Red Sox did all they could to further upset and take advantage of Plaintiff's state of mind following his mother's death.

## CONCLUSION

This lawsuit is about the management of The Boston Red Sox and the co-defendants. It is not about the fans, the legacy of the park, or the players. Plaintiff is proud to now be a part of the legacy of The Boston Red Sox. Former US Senator (now US Sec. of State) John Kerry issued Plaintiff an Award, noting that "At Fenway" had become a "part of the culture of The Boston Red Sox," and Governor Deval Patrick and US Senator Scott Brown also issued Citations to Plaintiff for the work (to be provided as evidence as this case proceeds).

Red Sox superstar David Ortiz posted the music video to his Facebook page when the Red Sox refused. Major League Baseball posted it on their Facebook page, but only when it was insinuated that William Shatner was going to call Bud Selig, the commissioner of baseball, if they didn't. Within ten minutes of that being stated as Plaintiff's intention to cause to occur, the video was posted on the MLB Facebook page, something the Red Sox did not want, and didn't do themselves despite the video being filmed at their own park with Plaintiff dressed like a Boston Red Sox player. The Boston Red Sox's own players, Will Middlebrooks and David Ortiz both posted the video to their Facebook page and Twitter accounts.

Just hours after the music video aired on "The Today Show," local radio station WEEI blasted the music video as terrible (a local sports station who covers the Red Sox). Its next guest following the tirade was Red Sox executive Sam Kennedy, whom they didn't even ask a single question of regarding the video despite just coming off a tirade against it on air. Plaintiff asks this Honorable Court to ponder why the station wouldn't seize such an opportunity to get the opinion of a Red Sox executive such as Mr. Kennedy unless the entire tirade was pre-ordained. Accumulatively, and through Discovery, Plaintiff's case will be proven to be true. Further information and exhibits will be provided in Plaintiff's forthcoming Opposition to Defendants Motion to Dismiss, which will undoubtedly be the Defendants first move, if Defendants do not Answer outright, which is the hope of the Plaintiff. Plaintiff maintains dozens of emails, phone records, and meeting notes, along with witnesses to various conversations.

This is a team that sticks poor kids in the back row of the bleachers under a Dunkin Donuts sign, puts them on camera to add salt to their wound, and calls themselves charitable. Why not put them next to the dug out? Because there's too much money to be made in those seats to waste them on the poor, seats the management charge over $580 <u>a piece</u> for (*now that* would be charitable). Bleacher seats are $28. After the Marathon bombing, which Plaintiff was just two blocks from when it occurred, the Boston Red Sox could not get their marketing department on the "B" (logo) "Strong" stickers fast enough. It is a team that has a long history of capitalizing on tragedies, so long as those tragedies appeal to the masses to fill the seats when the owners themselves wouldn't sit at the same table as a fan if their life depended on it, as one Red Sox executive told Plaintiff.

Merely "theatre" people (owners and management) continuously attempting to attract the attention of people that Plaintiff learned first-hand are considered "beneath them." One executive stated to Plaintiff, "We're a billion dollar company attempting to attract the attention of people making six bucks an hour, Charles Steinberg is living in a fairy tale and doesn't understand why 17 year olds don't appreciate John Williams. They just don't know who he is." Plaintiff repeated these statements to co-defendant

Friedman, which fell on deaf ears. One Red Sox employee stated "It was Steinberg's idea to prop soldiers up on the dug out to get the crowd in a cheering mood, then sticking them in shitty seats. It's all a play on what's hot and pulling on those heart-strings, then charging enormous fee's for a beer." Plaintiff contends the current ownership is a travesty to real fans. Some executives have stated to Plaintiff that they are not even fans of the game. "If you work at McDonalds, eventually you tire of the free Big Macs but people still want Big Macs so we gotta keep making them," one executive told Plaintiff. Further, proceeds from "At Fenway," the song and music video, were all aimed at charities, only advertising to have been paid with no monies to Plaintiff. Co-Defendant David Friedman had numerous in-person conversations in the company of others, one in a suite of the "NESN" booth, which was entirely overheard by Plaintiff's associate. There could be no mistake as to what the Red Sox led Plaintiff to believe would be support of the entire project. As co-defendant Friedman once stated, "We don't put things on our letterhead lightly." If it wasn't on paper, co-defendant "didn't recall" the conversation, even conversations that took place the day before.

Dr. Charles Steinberg, a dentist who is in charge of Red Sox entertainment, also, according to David Friedman, took aim at Plaintiff. When Plaintiff dedicated the video to his late mother, who is featured in the beginning scenes of the video and then a tribute after, things only got worse. Plaintiff acknowledges the full support he has received from the Red Sox fan base for standing up for his mother, while The Boston Red Sox Management, Steward Health Care System, and their mutual PR firm have done all they can to destroy what they allowed, but only after Plaintiff stood up for his mother publicly (or else why permit Plaintiff to be the first solo artist ever to film a full length music video at the park in the first place?). The music video was also released with full approval by Major League Baseball in a CD/DVD set (the video may be viewed at www.brianevans.com).

**RELIEF**

Plaintiff requests $10,000,000 (TEN MILLION DOLLARS) for the allegations stated, plus Damages as seen fit by a jury as to each Defendant in this case. Plaintiff requests court note his intentions to Amend the Complaint once counsel has entered this matter.

## JURISDICTION

28 U.S.C. §1332, Diversity Jurisdiction in that the claimed amount of relief exceeds $75,000, and both parties reside and/or conduct business in two different states. **Exhibit B** confirms where this matter all began and where the entirety of this deal was initiated, and that is Hawaii, where Plaintiff has always maintained residence before, during, and after this project began and concluded.

_____

BRIAN EVANS

Plaintiff, Pro Se

May 22nd, 2013